UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DENNIS E. ABBOTT,<br><br>          Plaintiff,<br><br>     vs.<br><br>SHELL FISHER, BRENT REINKE, JOHANNA SMITH, KAREN BARRETT, JAY NIELSEN, ROBIN SANDY, and J.R. VanTASSEL JR.,<br><br>          Defendants. | Case No. 1:11-cv-00571-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court in this prisoner civil rights case are the following motions: (1) Plaintiff's Motion for Preliminary Injunction (TRO) (Dkt. 18); (2) Defendants' Motion for Extension of Time to File Motion to Dismiss (Dkt. 21); (3) Defendants' Motion to Dismiss (Dkt. 23); (4) Plaintiff's Objection to Defendants' Motion to Dismiss and Motion to Strike Thereof (Dkt. 28); (5) Plaintiff's Motion to Strike Defendants' Reply Memorandum in Support of Motion to Dismiss (Dkt. 30); (6) Defendants' Motion to Strike Plaintiff's Motion to Strike Defendants' Reply Memorandum in Support of Motion to Dismiss and the Supporting Affidavit of Dennis E. Abbott (Dkt. 31); (7) Plaintiff's Motion to Commence Pleadings (Dkt. 32); and (8)

**MEMORANDUM DECISION AND ORDER - 1**

Plaintiff's Motion to Compel Discovery (Dkt. 33). Having reviewed the written arguments of the parties, as well as the record in this case, the Court has determined that oral argument is unnecessary, and therefore enters the following Order.

## BACKGROUND

Plaintiff is an inmate in the custody of the Idaho Department of Correction (IDOC) and is currently incarcerated at the Idaho State Correctional Institution (ISCI). On November 17, 2011, Plaintiff filed a Complaint alleging that defendants IDOC, Corizon Medical Services, Idaho Department of Health & Welfare, the Board of Corrections and several prison officials have failed to provide him with adequate mental health treatment since his re-incarceration in May 2011. (Dkt. 3.)

In the Complaint, Plaintiff alleges that he has suffered from schizophrenia and schizoaffective disorder for most of his life, and as a result, has taken psychotropic medications since age 12. (*Id.* at p.3.) Plaintiff further alleges that he has been in the custody of IDOC for over 25 years and although he was recently paroled, he was arrested in May 2011 for a parole violation and taken back into custody. (*Id.* at pp.3-4.) Plaintiff contends that since his re-incarceration in May 2011, he has been denied proper psychological and psychiatric care for his mental health conditions. (*Id.* at pp.4-8.)

On April 23, 2012, the Court entered its Initial Review Order and found that Plaintiff could proceed against only Defendants Shell Fisher and Johanna Smith on an Eighth Amendment claim for failure to provide any mental health treatment since May 2011. (Dkt. 9, p. 7.) The Court also permitted Plaintiff to submit a motion to amend the

**MEMORANDUM DECISION AND ORDER - 2**

Complaint if he had further allegations of participation or policy-based claims against the private entities. (*Id*. at 4.) Thereafter, Plaintiff filed a Motion to Amend Complaint on May 31, 2012 (Dkt. 15), which the Court granted and thereby permitted Plaintiff to also proceed against Defendant Karen Barrett (in addition to Defendants Fisher and Smith), but not against any of the remaining Defendants. (Dkt. 19.)[1]

Plaintiff then filed a Motion for Preliminary Injunction (TRO) on June 28, 2012, "to ensure that he receives proper medical care" and requested that he be moved out of the general population at ISCI and assigned to the prison's behavioral health unit "or other mental health facility comparable to Plaintiff's mental health care and needs." (Dkt. 18-1.) Defendants filed a response arguing that Plaintiff fails to meet the standards for injunctive relief. (Dkt. 20.)

By the terms of this Court's Order dated July 3, 2012 (Dkt. 19), Defendants had until August 3, 2012, to file an answer or motion to dismiss. On August 3, 2012, Defendants filed a Motion for Extension of Time to File Motion to Dismiss and requested a one week extension in which to file their Motion to Dismiss. (Dkt. 21.) On August 7, 2012, Defendants filed their Motion to Dismiss on the basis that Plaintiff has failed to exhaust his administrative remedies. (Dkt. 23.) Plaintiff filed an Objection to Defendants' Motion to Dismiss and Motion to Strike Thereof (Dkts. 27, 28) and argues that the

---

[1] To date, Defendants Fisher and Smith are the only defendants who have appeared in this action.

**MEMORANDUM DECISION AND ORDER - 3**

Motion to Dismiss should be stricken because it is without merit and in bad faith.[2]

On September 20, 2012, Plaintiff filed another Motion to Strike (along with a supporting Affidavit and exhibits), this time seeking to strike Defendants' Reply Memorandum in Support of Motion to Dismiss. (Dkt. 30.) Plaintiff asserts that Defendants should have sought leave of the Court to file the Reply Memorandum (which they did not do), and that the Reply Memorandum contains misleading facts and information. In response, Defendants filed a Motion to Strike Plaintiff's Motion to Strike Defendants' Reply Memorandum in Support of Motion to Dismiss and the Supporting Affidavit of Dennis E. Abbott, contending that Plaintiff's Motion and the Supporting Affidavit is an attempt to file a pleading not allowed by the Federal and Local Rules. (Dkt. 31.)

Finally, on November 29, 2012, Plaintiff filed a Motion to Commence Pleadings (Dkt. 32), and a Motion to Compel Discovery. (Dkt. 33.) Defendants filed a response to the Motion to Compel Discovery, and argue that discovery in this case is stayed pending the Court's ruling on Defendants' Motion to Dismiss. (Dkt. 34.)

Because Defendants' Motion to Dismiss asserts an affirmative defense that could result in this action being dismissed in its entirety, the Court will first address the Motions that must be determined preliminary to the Motion to Dismiss, then the Motion to Dismiss, and then the remaining pending Motions.

---

[2] Plaintiff filed the same pleading twice, as Docket Numbers 27 and 28. The court's ruling on Docket 28 will have the same force and effect on the duplicate pleading Docket 27.

**MEMORANDUM DECISION AND ORDER - 4**

REVIEW OF PENDING MOTIONS

1. **Defendants' Motion for Extension of Time to File Motion to Dismiss (Dkt. 21); Plaintiff's Objection to Defendants' Motion to Dismiss and Motion to Strike Thereof (Dkt. 28); Plaintiff's Motion to Strike Defendants' Reply Memorandum in Support of Motion to Dismiss (Dkt. 30); Defendants' Motion to Strike Plaintiff's Motion to Strike Defendants' Reply Memorandum in Support of Motion to Dismiss and the Supporting Affidavit of Dennis E. Abbott (Dkt. 31)**

Prior to addressing Defendants' Motion to Dismiss, the Court must first resolve several procedural Motions related to the Motion to Dismiss.

   A. *Defendants' Motion for Extension of Time to File Motion to Dismiss*

On August 3, 2012, Defendants timely filed a Motion for Extension of Time to File Motion to Dismiss. (Dkt. 21.) Good cause appearing, the Court will grant Defendants' Motion for Extension of Time.

   B. *Plaintiff's Objection to Defendants' Motion to Dismiss and Motion to Strike Thereof*

After Defendants filed their Motion to Dismiss on August 7, 2012, Plaintiff filed an Objection to Defendants' Motion to Dismiss and Motion to Strike Thereof. (Dkt. 28.) As to the Motion to Strike portion of Plaintiff's pleading, a court may grant a motion to strike pursuant to Federal Rule 12(f) if the contested language constitutes an "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. Proc. 12(f). However, federal courts generally disfavor motions to strike. *Bogazici Hava Tasimaciligi A.S. v. McDonnell Douglas*, 932 F.2d 972 (9th Cir. 1991) (unpublished table opinion); *Colaprico v. Sun Microsystems, Inc.*, 758 F.Supp. 1335, 1339 (N.D. Cal. 1991)

**MEMORANDUM DECISION AND ORDER - 5**

("[M]otions to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation."). In addition, a court must view the pleading under attack in the light most favorable to the pleader, *Cardinale v. La Petite Academy, Inc.*, 207 F.Supp.2d 1158, 1162 (D. Nev. 2002), and be mindful of the function of a 12(f) motion to strike – "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983).

In this instance, Plaintiff makes no specific reference to which portions of Defendants' Motion to Dismiss should be stricken, nor does he specify the basis for the strike – that some or all of the contents of the Motion to Dismiss constitute an "insufficient defense", or are "redundant, immaterial, impertinent, or scandalous." *See* Fed. R. Civ. Proc. 12(f). Instead, Plaintiff summarily asserts that the Court should strike Defendants' Motion to Dismiss for being "without true merit and [in] bad faith." (Dkt. 28, p.4.)

Defendants' Motion to Dismiss, however, raises a timely, affirmative defense that Plaintiff has failed to exhaust his administrative remedies. Such a defense, whether successful or not, clearly has a bearing on the subject matter of this litigation, and is an appropriate defense to raise at this stage in the proceedings. Accordingly, Plaintiff's Motion to Strike Defendants' Motion to Dismiss (Dkt. 28) will be denied. The Court will treat Plaintiff's Objection to Defendants' Motion to Dismiss and Motion to Strike Thereof as a Response to Defendants' Motion to Dismiss pursuant to the Initial Review Order

**MEMORANDUM DECISION AND ORDER - 6**

(Dkt. 9) and Local Civil Rule 7.1(c)(1).

    **C.**    *Plaintiff's Motion to Strike Defendants' Reply Memorandum in Support of Motion to Dismiss (Dkt. 30); Defendants' Motion to Strike Plaintiff's Motion to Strike Defendants' Reply Memorandum in Support of Motion to Dismiss and the Supporting Affidavit of Dennis E. Abbott (Dkt. 31)*

After Plaintiff filed his Objection to Defendants' Motion to Dismiss and Motion to Strike Thereof, Defendants filed their Reply Memorandum in Support of Motion to Dismiss. (Dkt. 29.) Two weeks later, Plaintiff filed a Motion to Strike Defendants' Reply Memorandum in Support of Motion to Dismiss. (Dkt. 30.) In that Motion, Plaintiff argues that Defendants' Reply Memorandum constitutes a "traverse memorandum" which requires leave of the Court to file. Plaintiff also makes additional substantive arguments opposing Defendants' Motion to Dismiss (Dkt. 30, pp.2-6), and submits another Affidavit and exhibits in support thereof. (Dkts. 30-1, 30-2, 30-3.)

Defendants responded by filing a cross Motion to Strike Plaintiff's "Motion to Strike Defendants' Reply Memorandum in Support of Motion to Dismiss" and the Supporting "Affidavit to [sic] Dennis E. Abbott." (Dkt. 31.) Defendants argue that Plaintiff's Motion to Strike is procedurally improper. The Court agrees. Pursuant to Local Civil Rule 7.1, once a moving party has filed a motion, the responding party shall serve and file a "response brief" within 21 days after service of the moving party's motion. Dist. Idaho Loc. Civ. R. 7.1(c)(1). Once the response brief has been served upon the moving party, the moving party may submit a "reply brief" within 14 days of such service. *Id.* at 7.1(b)(3). No other motion practice briefing is specified or allowed by the

**MEMORANDUM DECISION AND ORDER - 7**

Local Civil Rules.

Here, Defendants timely and properly filed their Reply Memorandum pursuant to Local Civil rule 7.1(b)(3); they were not required to seek leave of the Court to do so. In contrast, the Court concludes that Plaintiff's additional substantive arguments opposing Defendants' Motion to Dismiss and his supporting Affidavit and exhibits <u>do</u> constitute supplemental briefing not permitted by the Local Civil Rules, and not allowed without prior, written leave of the Court. Accordingly, Plaintiff's Motion to Strike Defendants' Reply Memorandum in Support of Motion to Dismiss (Dkt. 30) will be denied, and Defendants' Motion to Strike Plaintiff's "Motion to Strike Defendants' Reply Memorandum in Support of Motion to Dismiss" and the Supporting "Affidavit to [sic] Dennis E. Abbott" (Dkt. 31) will be granted.

**2.      Defendants' Motion to Dismiss (Dkt. 23)**

Pursuant to Federal Rule of Civil Procedure 12(b), Defendants have filed a Motion to Dismiss on the basis that Plaintiff failed to exhaust his administrative remedies prior to filing his lawsuit. For the reasons set forth below, the Court will grant Defendants' Motion to Dismiss.

     **A.**      *Standard of Law*

Pursuant to the Prison Litigation Reform Act of 1995 (PLRA),[3] a prisoner is required to exhaust all of his administrative remedies within the prison system before he

---

[3] 110 Stat. 1321-71, *as amended*, 42 U.S.C. § 1997e, *et seq*.

**MEMORANDUM DECISION AND ORDER - 8**

can bring a civil rights lawsuit challenging the conditions of his confinement. 42 U.S.C. § 1997e(a). "Proper" exhaustion of administrative remedies is required, meaning that "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006).[4] "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). The *Jones v. Bock* Court noted the important policy concern behind requiring exhaustion is that it "allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Id*. at 204.

Where there is an "informal[]" and "relative[ly] simpl[e]" prison grievance system, prisoners must take advantage of it before filing a civil rights complaint. *Woodford v. Ngo*, 548 U.S. at 103. In *Woodford v. Ngo*, the prisoner had filed his grievance within six months of the incident at issue, rather than within fifteen days as required by the California Prison grievance system. *Id*. at 2383-84. The Supreme Court rejected the Ninth Circuit's determination that the prisoner "had exhausted administrative remedies simply because no such remedies remained available to him." *Id*. at 2384.

Failure to exhaust remedies is an affirmative defense that should be brought as an

---

[4] *Cf. Jones v. Stewart*, 457 F.Supp. 2d 1131, 1136-37 (D. Nev. 2006) (if, *at every level of administrative review available*, prison officials review the merits of a grievance that does not meet the applicable procedural rules, such as timeliness, the prisoner has satisfied the administrative exhaustion requirement of *Woodford v. Ngo*).

**MEMORANDUM DECISION AND ORDER - 9**

unenumerated 12(b) motion. *Wyatt v. Terhune*, 315 F.3d 1108 (9th Cir. 2003). In deciding a motion to dismiss for failure to exhaust administrative remedies, a court may look beyond the pleadings and decide disputed issues of fact. *Id.* at 1119-20. Defendants bear the burden of proving failure to exhaust. *Brown v. Valoff*, 422 F.3d 926 (9th Cir. 2005).

  **B.**  *Discussion*

  The IDOC has a relatively simple grievance procedure. The inmate first submits an offender concern form, then a grievance form if informal resolution cannot be accomplished, and finally an appeal of the response to the grievance. *See Whittington Aff.* (Dkt. 23-3, p.2)*; IDOC Division of Operations Directive 316.02.01.001* (Dkt. 23-3, pp.8-20.) An offender must complete all three steps in order to exhaust the administrative grievance process. (Dkt. 23-3, p.2.)

  The first step in the inmate grievance process begins with the inmate addressing an Offender Concern Form to the staff member most capable of responding to and, if appropriate, resolving the issue. (*Id.*) The staff member should respond within seven days of receipt of the Offender Concern Form. The concern form is in triplicate and the yellow copy is returned to the offender with the staff response. (*Id.*)

  If the issue is not resolved in the first step, the offender may then proceed to the second step and file a Grievance Form within 30 days of the incident or problem that is the basis for the grievance (unless the reviewing authority grants an extension of time). (*Id.*) The Grievance Form must comply with the following requirements: (1) the yellow copy of the Offender Concern Form with the staff member's response must be attached to

**MEMORANDUM DECISION AND ORDER - 10**

the Grievance Form; (2) the Grievance Form must be handwritten (photocopies are not allowed); (3) the Grievance Form must contain specific information including the nature of the complaint, dates, places, and names; and (4) the offender must suggest a solution to the issue and can only raise one issue per grievance. (*Id*. at 3.) If the Grievance Form is completed incorrectly, it is returned to the offender (with all attachments) using a Grievance/Disciplinary Offense Report (DOR) Transmittal Form. (*Id*.) The Grievance Coordinator returns everything to the offender and does not keep a copy of the incomplete grievance (or any of the attachments).

If the Grievance Form is filled out correctly, the Grievance Coordinator enters the grievance information into the Corrections Integrated System (CIS) electronic database and assigns it to the staff member most appropriate to respond to, and resolve, the grievance. (*Id*.) The staff member's response is then sent to the Grievance Coordinator who logs the information into the CIS database, and that information is then forwarded to a "reviewing authority," who is usually a deputy warden. (*Id*.) The reviewing authority must review the grievance, the staff member's response, and deny, modify or grant the offender's suggested solution. (*Id*.) The reviewing authority then returns the grievance to the Grievance Coordinator, who logs the reviewing authority's response in the CIS database and forwards a printed copy of the response, along with the original grievance paperwork, to the offender via institutional mail. (*Id*. at pp.3-4.) A copy of the original Grievance Form and any attachments are filed in the facility administration area. (*Id*. at 4.)

**MEMORANDUM DECISION AND ORDER - 11**

If the offender is not satisfied with the reviewing authority's response to his grievance, he may proceed to the third step by filing an appeal. (*Id*.) Once the Grievance Coordinator receives the appeal, it is entered into the CIS database and is forwarded to the "appellate authority," who is typically the facility head. (*Id*.)[5] The appellate authority must respond within 14 days of receipt of the appeal and notify the Grievance Coordinator that the appeal has been completed. The Grievance Coordinator logs the completion date in the CIS database, forwards a printed copy of the grievance and the offender's original attachments to the offender, and files a copy of the printed grievance, the original Grievance/Appeal form, and all attachments in the facility administration area. (*Id*.) Upon completion of all three steps, the offender grievance process is exhausted. (*Id*.)

Here, Defendants contend that during the time period at issue – August 4, 2011 to November 17, 2011[6] – Plaintiff filed four grievances, all of which were returned unprocessed to Plaintiff because of his failure to follow one or more of the steps of the IDOC grievance procedure. Defendants submit the following evidence in support of the four grievances at issue: (1) Plaintiff filed a Grievance Form on or about August 22, 2011, which the Grievance Coordinator did not process because no concern form was

---

[5] At ISCI, the appellate authority is the Warden, except for medical grievances, in which case the appellate authority is the contract medical provider. (Dkt. 23-3, p.4.)

[6] Although Plaintiff's Complaint alleges a denial of mental health treatment since his reincarceration in May 2011, Plaintiff's offender tracking sheet indicates that Plaintiff was not imprisoned at ISCI until August 4, 2011. (Dkt. 23-2, p.4.)

**MEMORANDUM DECISION AND ORDER - 12**

attached, nor was any specific information provided in the grievance as required by IDOC policy. (Dkt. 23-3, p.5.) Defendants' CIS database record and a copy of the Grievance/DOR Transmittal Form sent back to Plaintiff summarize these errors.(Dkt. 23-3, pp. 25-27); (2) Plaintiff filed a second grievance on or about September 7, 2011, which the Grievance Coordinator did not process because Plaintiff did not send his concern form to the staff member most capable of responding to the issue – in this instance, to medical staff. The Grievance Coordinator noted that Plaintiff should send his concern form to medical staff, as required by IDOC policy. (Dkt. 23-3, p. 5.) Defendants' CIS database record and a copy of the Grievance/DOR Transmittal Form sent back to Plaintiff summarize these errors. (Dkt. 23-3, pp. 28-30); (3) Plaintiff filed his third Grievance Form on or about October 4, 2011, which the Grievance Coordinator again did not process because of a number of errors – Plaintiff did not send the underlying concern form to medical staff, who is the staff most appropriate to respond to his issue, he did not offer a relevant solution to the problem, and he did not sign the Grievance Form. (Dkt. 23-3, p. 6.) Defendants' CIS database record and a copy of the Grievance/DOR Transmittal Form sent back to Plaintiff summarize these errors. (Dkt. 23-3, pp. 31-33); (4) Plaintiff filed a fourth Grievance Form on or about November 8, 2011, which the Grievance Coordinator did not process because Plaintiff attached an altered photocopy of his Offender Concern Form, instead of the yellow copy of the original concern form showing the staff response. (Dkt. 23-3, p. 6.) Defendants' CIS database record and a copy of the Grievance/DOR Transmittal Form sent back to Plaintiff summarize this error. (Dkt.

**MEMORANDUM DECISION AND ORDER - 13**

23-3, pp. 34-35; Dkt. 27-2, p.13.)

In sum, Defendants have submitted the Grievance Coordinator's Affidavit wherein she explains the IDOC grievance policy (a copy of which is attached to her Affidavit) as well as the reasons for Plaintiff's unprocessed grievances. Defendants have also provided copies of all the records maintained by ISCI regarding Plaintiff's unprocessed grievances.

In Plaintiff's Response, he argues that the Grievance Coordinator should not have rejected his grievances four times on mere technicalities.[7] The reasons he gives for failure to comply strictly with the grievance procedures are that he is "acutely mentally psychotic," he could not "conform to the proper means of procedures" and did not possess "the mental integrity to understand the grievance process." (Dkt. 27, p.1.) The Court finds Plaintiff's argument unpersuasive and unsupported by the evidence in the record. Plaintiff's only attempt to submit "evidence" is his own Affidavit wherein he attests "I state that I am mentally ill, and have been all my life." (Dkt. 28-1, p.1.)

He does not, however, attest that he lacks the capacity to understand the grievance process. To the contrary, Defendants contend and the Court agrees, that Plaintiff has been in the custody of IDOC for most of his adult life and has filed or participated in many

---

[7] Plaintiff filed copies of several Offender Concern Forms, Grievances, and Grievance/DOR Transmittal Forms as exhibits to his Response. Many of these forms were already produced by Defendants, although Plaintiff did include one additional Grievance/DOR Transmittal Form dated October 14, 2011 that was not produced or addressed by Defendants. Nonetheless, the Transmittal Form informs Plaintiff that the underlying Grievance Form is being returned as unprocessed for the same reasons provided in the September 7, 2011, and October 4, 2011 Transmittal Forms – that Plaintiff did not send his concern form to the staff most capable of responding to the issue (medical staff).

**MEMORANDUM DECISION AND ORDER - 14**

actions in the United States District Court since 1995.[8] In each of those lawsuits, Plaintiff alleged that he had exhausted his administrative remedies before filing the complaint. These allegations demonstrate Plaintiff's knowledge of, and purported compliance with, the IDOC grievance process. Plaintiff also has attached a number of Offender Concern Forms and Grievance/Appeal Forms to his Response (including those that relate to the four unprocessed Grievance Forms discussed herein), which further supports Plaintiff's familiarity with the IDOC grievance system. Indeed, the ISCI Grievance Coordinator (who has served in that capacity since July 2006) attests in her follow-up Affidavit that "[b]ased upon my experience with [Plaintiff], he understands the grievance process very well." (Dkt. 29-1, p.2.) Accordingly, the evidence in the record shows that Plaintiff is both familiar with and capable of complying with the grievance process.

Plaintiff also attempts to justify his failure to comply with the IDOC grievance process by arguing that IDOC should have a separate grievance system for processing medical complaints. The Grievance Coordinator responded to this argument as follows:

> [Plaintiff] is incorrect when he implies that the grievance system is deficient because there is no special process for offenders complaining about medical issues. As I explained in my earlier affidavit, the grievance process just requires that concern forms be addressed to the staff member most capable of responding to the issue. If an offender has a medical complaint, he is merely required to submit a standard form addressed to medical staff . . . [and] if an offender is not satisfied with the response from medical, he can submit a normal grievance form. There are no special "medical grievance forms" for an offender to use.

---

[8]In addition to the instant action, Plaintiff has filed the following actions: CV-00095-EJL, *Abbott v. USA, et al.*; CV-00039-MHW, *Abbott v. State of Idaho, et al.*; CV-00472-BLW, *Abbott, et al. v. Sombke, et al.*; CV-00318-EJL, *Abbott v. Craven, et al.*; CV-00638-CWD, *Abbott v. Nielson, et al.;* CV-00561-BLW, *Abbott, et al. v. Reinke, et al.*; and CV-00044-EJL, *Abbott, et al. v. Wasden, et al.*

**MEMORANDUM DECISION AND ORDER - 15**

(Dkt. 29-1, p.2.) The Grievance Coordinator's further explanation of the IDOC grievance system is straightforward and reasonable; Plaintiff's argument that the lack of a separate medical grievance process somehow justifies his failure to exhaust his administrative remedies is without merit. The record shows Plaintiff was repeatedly told to submit his concern form to medical staff. He simply refused to do so.[9]

After reviewing the arguments and evidence related to Defendants' Motion to Dismiss, the Court concludes that Plaintiff has not exhausted the administrative remedies available to him through the IDOC grievance system. Accordingly, the Court will grant Defendants' Motion to Dismiss for failure to exhaust administrative remedies.

### 3.     Plaintiff's Motion for Preliminary Injunction (TRO) (Dkt. 18)

On June 28, 2012, Plaintiff filed a Motion for Preliminary Injunction (TRO) and requested that he be moved out of the general population at ISCI and assigned to the prison's behavioral health unit "or other mental health facility" so that Plaintiff's mental health care and needs could be adequately treated. (Dkt. 18-1.) Because the Court will grant Defendants' Motion to Dismiss, Plaintiff's Motion for Preliminary Injunction (TRO) is now moot. Nevertheless, the Court notes that if Plaintiff still desires to obtain the relief he seeks via his preliminary injunction motion – to obtain adequate mental health treatment while incarcerated at ISCI – such relief may be pursued through the IDOC

---

[9] For example, on Plaintiff's third grievance, which was returned in part for the reason that the resolution suggested did not match the issue being grieved, Plaintiff wrote: "My solution is to cut off my left leg. This will stop the water buildup in my chest, then I wouldn't need my oxygen condenser." (Dkt. 27-2, p. 7.) This type of response does not show a good faith effort to comply with the grievance procedures–the object of which is to resolve problems within the prison.

**MEMORANDUM DECISION AND ORDER - 16**

grievance process.

**4.     Plaintiff's Motion to Commence Pleadings (Dkt. 32)**

On November 29, 2012, Plaintiff filed a Motion to Commence Pleadings (Dkt. 32), requesting that the Court address Plaintiff's Motion for Preliminary Injunction and the dispositive motions filed in this case. To the extent this Order resolves all pending motions in this action, the Court hereby grants Plaintiff's Motion to Commence Pleadings.

**5.     Plaintiff's Motion to Compel Discovery (Dkt. 33)**

The last motion pending before the Court is Plaintiff's Motion to Compel Discovery, which he filed on November 29, 2012. (Dkt. 33.) Defendants filed a Response to Plaintiff's Motion to Compel and argue that pursuant to the Initial Review Order, all discovery in this case regarding the merits of this case is stayed pending the Court's ruling on Defendants' Motion to Dismiss. (Dkt. 34.) Although the Court agrees with Defendants' assertion that all discovery in this matter is stayed pending the Court's ruling on Defendants' Motion to Dismiss (*see* Dkt. 9, p.9), Plaintiff's Motion to Compel Discovery is now moot because of the Court's decision herein to grant Defendants' Motion to Dismiss.

## ORDER

**IT IS HEREBY ORDERED:**

1.     Defendants' Motion for Extension of Time to File Motion to Dismiss (Dkt. 21) is **GRANTED**.

2.     Plaintiff's Objection to Defendants' Motion to Dismiss and Motion to

**MEMORANDUM DECISION AND ORDER - 17**

Strike Thereof (Dkt. 28) is **DENIED**.

3. Plaintiff's Motion to Strike Defendants' Reply Memorandum in Support of Motion to Dismiss (Dkt. 30) is **DENIED**.

4. Defendants' Motion to Strike Plaintiff's Motion to Strike Defendants' Reply Memorandum in Support of Motion to Dismiss and the Supporting Affidavit of Dennis E. Abbott (Dkt. 31) is **GRANTED**.

5. Defendants' Motion to Dismiss (Dkt. 23) is **GRANTED**. All claims against Defendants Shell Fisher, Johanna Smith, and Karen Barrett are dismissed with prejudice.

6. Plaintiff's Motion for Preliminary Injunction (TRO) (Dkt. 18) is **MOOT**.

7. Plaintiff's Motion to Commence Pleadings (Dkt. 32) is **GRANTED** to the extent this Order resolves all pending motions in this action.

8. Plaintiff's Motion to Compel Discovery (Dkt. 33) is **MOOT**.

DATED:  **December 21, 2012**

_____
Honorable B. Lynn Winmill
Chief U. S. District Judge